We have four cases on the calendar this morning. Patent case from district court, three government employee cases which will be, have been submitted on the briefs and will therefore not be argued. And so we'll hear one case. Praxair v. ATMI and Advanced Technology Materials, Inc. 2007, 1483, 1509. Mr. Hartman. Yes, thank you, thank you. I neglected to mention that we consider the cross appeal to be additional arguments to achieve essentially the same result. And so you're free to make all the arguments you wish. We tell you now in advance so you can have thought about it. But there will not be a fourth argument. Thank you. Please proceed. Good morning and may it please the court. I'm Chris Harnett representing Praxair here today. In accordance with your statements about the timing and due to the configuration of the issues that are presented on appeal and cross appeal, unless the court would like me to proceed differently, I would propose to divide Praxair's time equally. In the first instance, I would like to address the three issues that Praxair raised on its appeal. With the permission of the court. I don't want to get too technical, but let me point out that your second argument is a response to him, not to raise other issues that you didn't raise before. Understood. So you're second? Okay, fine. Understood. So with the permission of the court, I would begin by discussing the district court's inequitable conduct ruling. I'll then proceed to address the district court's finding that the port body claim limitation was somehow indefinite. And then I will briefly address the injunction issue. And in my second argument, I'll reserve on Praxair's for rebutting HMI's argument and to address the issues that HMI raised in its cross appeal. The cross appeal is not proper, is the problem. Under our decisions, infringement is not a ground for cross appeal where there's been a holding of invalidity or inequitable conduct and an alternative ground for invalidity isn't a ground for a cross appeal. That's the problem. Understood. Then if I push it more properly, I will address the issues raised in their briefs and on their appeal, which I will do. Starting with the inequitable conduct ruling, we would respectfully submit that the district court's ruling is the product of several clear errors. There is no evidence of intent to deceive the patent office on the record, and there is no evidence from which intent can be inferred. Is there a difference between the two patents? It struck me in your second brief that you pointed out that these four statements that the district court relied on were made only in the prosecution of the 115 patent and not the 609 patent, if I understand correctly. There are differences in the patents, only to the extent that there are, of course, differences in the claims. But is my statement accurate that the four statements the district court relied on, in your view, were only made in the prosecution of the 115 patent? Historically, that is a correct fact, yes. And the reason we raise it in our briefs is it certainly was combined in A.T.M.I.'s argument, suggesting that these were made in both arguments. But the fact of the matter is the 609 patent was prosecuted first, the 115 prosecuted second. These arguments were in 115 only. Whether that has any impact, the only impact we would suggest is that if there is a case of infectious inequitable conduct, it wouldn't apply to the 609 patent. And we would respectfully submit that there is no inequitable conduct in the first instance, so infectious inequitable conduct should not even be an issue. It was more of a housekeeping matter to address a statement. Neither of you wants us to divide the two. No. Each of you wants to win on both. But I think the point, Judge Dyke's question, is does this make a stronger inequitable conduct argument with respect to the 115 in which these statements were made? No. Of course, both of you are going to say no to that, I suppose. Right. But it does seem to me that it's one thing simply not to produce something, and it's another thing to say there's nothing out there that is contrary to this if, in fact, there's evidence that you know there is. And that is exactly the point on the intent argument, Your Honor. There is no evidence that any of the attorney or the inventors had any awareness that there was material prior art that was not disclosed. The four arguments that were made during the prosecution of the 115 patent related to four features of the invention. It had to do roughly with- But suppose there was a statement that's inaccurate, and there's prior art that they were aware of that makes the statement inaccurate. That could lead to a finding of intent and a finding of inequitable conduct, right? Theoretically, I suppose it could, but the whole point of intent is that the inventors and the attorney have to have awareness that there is something material out there that they are making arguments contrary to. A simple mistake does not amount to inequitable conduct. And I would submit there's not even a mistake here because it's very critical to realize that the piece of RFO art- inconsistent with the RFO prior art. And I would submit it's not even inconsistent with what's being called the RFO prior art. The only RFO prior art that's of issue here is the Larson article. And it is undisputed that Mr. Ptolemy, the attorney, and the three inventors did not know about Larson or its contents. To the contrary, all they knew about was- But I think you're making too much out of the Larson article. Let's put that aside. Let's assume that that isn't the ground on which she relied. That she's saying that this RFO prior art, which did restrict the flow, and that the existence of that art was inconsistent with the four statements that were made. Right. Are you saying it's not inconsistent? I'm saying it's not inconsistent. Why is that? Is there testimony to that effect? Yes, Your Honor. By whom? The testimony is by the attorney. The attorney said- The attorney? The attorney, Ptolemy. The prosecuting attorney testified at trial that his understanding of what an RFO was in general was basically that any time you had any restricted flow, that in his mind is what an RFO is. And he said, I believe that art fairly disclosing that was before the office. And that is absolutely true. The Tom 693 patent discusses the inlet to the fifth flow gas passage that is provided with a suitable flow restriction device. And that, Your Honor, is what Judge Robinson decided was the critical fact in finding inequitable conduct. She was saying for RFO art, the significance of it is that it provided a restriction in the flow path. Where is this testimony by the attorney? Which page? Which page? I have it right here. A9304, his testimony. Specifically, he said that any time there is a change in the diameter of something in a valve or any flow control device, that could be a restricted flow office. And then he went on to say, the references that were disclosed in all fairness could be looked at as showing that, 9304 to 9305. Then there is the inventor testimony from Inventor Martin, who said that he did not believe that RFOs were part of his invention. One must remember here that the devices of his invention... Well, the fact that they're not part of his invention seems to me to be irrelevant. The question is whether the RFO prior art was inconsistent with the four statements. That's what I was asking you about. But I have to come back to the intent of it. Let me explain to you why it wasn't inconsistent with the four statements. The four statements dealt basically with portability, economy, the restriction in the flow path. All of the RFO prior art was somewhere downstream. One of the key factors of this invention is that the restrictor was in the flow path. And that is consistent with Judge Robinson's claim construction, which ATMI does not challenge. Any of this RFO art... An RFO by Dr. Glue, ATMI's expert, says it's simply a hole in a plate. It's something very simple. But that was all downstream. All the portability arguments, you could pick up this thing and walk around with it because the flow restrictor is inside the tank. That's very different than the prior art. Were the four statements restricted to upstream restrictions? Well, when you think of it, the advantages that they were talking about, there was no prior art that allowed for uncomplicated, portable, floor restrictor in the flow path that had specific dimensions of the orifice of less than two millimeters. So I would respectfully submit, yes. And even if they were, even if this argument was technically incorrect, the proper analysis, Your Honors, is that none of these gentlemen who had adjourned under Rule 56 thought they were being misleading, thought they were correct. They went in there with a pure heart, which is why the intent element is very important here. I would respectfully submit that the district court also erred in her reliance on the Bruno case and then the ignorance of the M. Eagles case, which is issued subsequently. The district court kind of not- But I don't see any, the trouble is I'm not seeing any specific testimony addressed to the four statements where the people explain why they thought that the statements were not inconsistent with the RFO prior art. That's the problem I have. Because what RFO prior art are we talking about is the issue. In their minds, the- Forget about in their minds. What about the testimony? It doesn't seem to me that they really addressed the four statements. I mean, if they had addressed the four statements and said, we didn't think the RFO prior art was inconsistent with these statements, that would be one thing. But I don't see that they did that. Because they couldn't have done that, Your Honor, and here's the reason why. In real time, when they were prosecuting the application, and in real time is when you do the intent analysis, in real time it never dawned on them that the RFO art could be significant. So in real time, they would have, in order to give that testimony- They could have testified that it never occurred to them that the RFO prior art was inconsistent with these statements, but I don't see that there is such testimony. But there's more global testimony than that. They testified that, A, the examiners thought the RFO art was- that things that liked the RFO art, like a restrictor in the flow path, was already before the examiner. And two, the inventor testified that this downstream RFO was not what I considered to be part of the invention. And the invention, under the court's claim construction, which is not challenged, requires the flow restrictor in the flow path. But basically, for the inventors to come forward 10 years after the fact, would basically, under the Bruno case, be asking them to make up a story. Because 10 years later, they say, it never dawned on me. I don't- there's no reason- I can't tell you, Your Honor, I can't tell you, jury, why it is that I didn't disclose it, because it didn't cross my mind. I can't tell you why, at the time, I thought these weren't inconsistent, because it didn't cross my mind. To impose- it would almost lead to a duty to investigate. If an inventor has some vague awareness of a component, to an invention that is a multiple-component device, you know, this isn't an invention, the 609-115 patents, just directed to a flow restrictor, it's a multi-component device. It's got- Mr. Hannan, are there other points you'd like to raise? Yes, there are. Let me ask you, if you're moving on to port body, let me ask you this question. What's the difference, in your view, between the port body and the valve body? Valve body, 50, is the port body minus the screw threads. Minus the screw threads? And the port body is valve body, 50, with the screw threads. Because when one reads the- When you say the screw threads, there are two sets of screw threads. Are you talking about the ones at the bottom of the valve body? If we look at page 7 of the yellow brief, it's the screw threads at the bottom, which, when you read the- When you read the portions of the specification that describe what the port body is, the port body is sealingly engaged with the tank. And I would note that ATMI has studiously avoided addressing in any of their briefs the testimony of their expert, who fully understood what the screw threads did, and that they sealingly engaged this structure into the tank. Let me tell you what my problem is. I had the same question in my mind that Judge Bryson had, but if you look at the figure in the patent, there's different shading for the valve body and the screw threads, right? They're not shaded the same way. The hash marks go in different directions. Right. So it seems clear from that that the valve body and the port body are not the same thing. Oh, they're not coextensive. The valve body is labeled 50, and when you read the specification in view of figure 2, what the port body must be, it's a structure that connects the outlet of a pressurized tank and includes a path of discharge of fluid from the pressurized tank. So what you have here is valve body 50 is this metal housing here. The screw threads- I'll hold up this one. It's easier for you to see. The screw threads sealingly engage it with the tank, and it does everything that the specification tells you. So it's what it does, where it's located, and what it has to accomplish. But it's not labeled port body. And it doesn't have to be. Under Section 1, there's no requirement that you have any figure. There's no requirement that anyone has to have a reference numeral. What the requirement under 112 is, is that in order for something to be indefinite, it has to be insolubly ambiguous, unamenable to construction. When you say the threads, are you talking about the entire structure that is cross-hatched in a direction opposite to the rest of the valve body? There's a structure at the bottom of the valve body that includes threads and some other- actually, two sets of threads, one of which attaches to the figure 30. Oh, you're talking about the threads here that just basically go to the on-off valve. That's the top set of threads. No, I'm talking about the- if you look at the bottom of what you're calling the valve body, there is a structure, which I thought is what you were just talking about with Judge Dyke, that has cross-hatching that goes in the opposite direction from the orange cross-hatched material immediately above it. Is that what you're saying- is that what you're calling the threads? The sawtooth aspect of that is the threads. What's the rest of it? What is the name of the object that is cross-hatched in the opposite direction from the rest of the valve body? I'm not necessarily sure it's given a name, but when one looks- Is it a different structure? Functionally, when you look at this, this is a piece of metal. Is it part of the valve body? By virtue of the fact that it is- the valve body is represented as 50, and I agree with you that in historical terms the cross-hatching says that the valve body is this thing. This is something other than the valve body? This is something when you take the valve body and you have it adapted for sealing engagement with the tank, that is what the skilled worker would understand as the port body. You're saying that the port body is the valve body plus this thing at the bottom that has the cross-hatching in the other direction? Yes. Absolutely. If you look at page 7 of our yellow brief, in conjunction with the language of the specification saying what the valve body is, what it's supposed to do, and where it's located, it shows you that a port body is adapted for communication, that it forms the inlet, it forms a gas flow path, and it's crystal clear. It can optionally house other components, such as a bellows and poppet thing. If you look at figure 2, it houses the bellows and poppet apparatus. This is a fairly simple mechanical structure. There's no expert witness, and I understand that indefiniteness is a question of law, but there's no expert witness who says that combining these two features, the valve body and the screw thread structure, is the port body, right? Well, not at trial. In their expert reports and depositions, which you cite, both of our experts... The stuff that you cite seems to me that it does not really provide any support for what you're saying. In fact, your expert witness in the other case was very confused about what the port body was. He kept saying, well, it's this one thing, it's another thing, sometimes it's one thing, sometimes it's another. Yeah, there are multiple embodiments of it, no doubt about it. There's different ways that a person of ordinary skill in the art could configure one of these. But the point is that there is no clear expert testimony saying what you're saying, that the port body is a combination of the valve body and this other cross-hatched area with the screw threads. Well, I was there. I understand that Dr. Karvelas would have believed that that was the case, would have testified that way at trial, if this patent hadn't been knocked out. But you're quite correct, Your Honor. It is a matter of law. It is done on the intrinsic evidence. And if one looks at the intrinsic evidence... We have no help on this. There's no support for your position. I respectfully disagree. I think that when you look at Karvelas, Karvelas and Sherman, at the very least, agreed with our claim construction, which by definition reads on valve body 50 and the screw threads. Our proposed construction, that it's a structure that connects to the outlet of a pressurized tank and includes a path to the discharge of fluid from the pressurized tank, would be valve body 50 with the screw threads. It fully complies with the claim language. This is not a case where it is insolubly ambiguous and not amenable to construction. These are in terms of degree, in terms of physical attributes. This is something you can look at and understand. It's a simple mechanical structure, ancillary to the heart of the invention of the 895 patent. One thing I do want to point out, the 895 patent isn't just a third patent that we're piling on the 609 or the 115 patents here. It's an important piece of Praxair's technology that we think protects some very important aspects of what Praxair is protecting here. It's directed to some unique attributes where a valve stays engaged until a pressure differential is reached. The port body is a physical structure that sits on top. You screw it into the top of the tank and it forms an outlet port. It's something that any mechanic looking at figure two is going to figure out. Mr. Hannan, you've exceeded your time, including your rebuttal time, but we've asked a lot of questions. We'll give you three minutes back, and I'll give Mr. Powell some extra time if he needs it. Thank you, Your Honor. May it please the Court. I'd like to begin with the inequitable conduct issue, and I'd like to begin by addressing the question raised by both Judges Dyke and Bryson regarding whether there's a difference between the 115 and the 609. In my mind, there is a difference, but not one that makes a difference. It is, of course, different that the arguments that were made, the four arguments that were made, were only made in the 115, and I would concede that that makes the inequitable conduct case greater for that patent than for the other. It does not mean that there is not a similar inequitable conduct case for the 609, and that arises from the fact that the claim language, the material claim language and claim terms that are in the 609 are the same as those that were being argued in the 115, and the relevance and the materiality of the RFO prior art is just as relevant to the 609 as it was to the 115. Mr. Powell, where is the intent that she found? She found no intent. She concluded that these three people had knowledge of material prior art, that it was not disclosed to the Patent Office, and there was no explanation. From all of that, or from that, she inferred intent, and I don't see any indication of intent. You seem to be relying on Bruno, which had a much different fact pattern. There was a submission to the FDA, certain material, but not to the Patent Office, thereby suggesting that there was a conscious distinction permitting an inference of intent. Where was the intent here? The intent, Your Honor, and I believe there's no abuse of discretion with regard to her conclusion regarding intent. I believe the principal bases for that conclusion, which I think are supportable, are first, the absence of an explanation given its materiality. This Court's precedents hold that where there is something that's fairly material as this clearly is, and let's be clear why it's material, these inventors were using the RFOs in their own devices for precisely the same purposes as the invention that they claim, i.e., to protect themselves from hazardous gases used in the semiconductor industry. That's not a showing of intent to deceive. It is something from which intent to deceive may be inferred, and it is, of course, not a smoking gun document that says, which we rarely have. The issue is, I think, before this Court, was it an abuse of discretion for the Court to infer intent based on the absence of an explanation where the inventor was using this prior art device for precisely the same purpose? I'll tell you what the problem is. She seemed to have been confused, because in her opinion in A92, she refers to these four statements that we've been focusing on as having been made in the course of the 609 patent prosecution. That's incorrect, right? That's incorrect. They were made in the course of the 115. She seems to have thought that the four statements infected both patents, whereas if I understand what you're saying, you agree that the four statements are only pertinent with respect to inactable conduct on the 115 patent. Pertinent? It's hard to know what's in Judge Robinson's mind on this question. I would characterize it slightly differently, Your Honor. I would say that she relied on the fact that they made the four statements, which are, I believe, demonstrably inconsistent. Heavily relied on them. Heavily relied upon them, but not solely. She also relied on the absence of an explanation, which is under this Court's precedence a cognizable basis for an inference of intent. Where there's materiality, if there's no explanation offered at all, and there wasn't one here, that is a basis under this Court's precedence to say, I may infer intent by looking at the people in front of them. And I don't believe that's... The intent argument with respect to the 609 prosecution is extremely weak. With respect to 115, it's obviously clearly strong based on the four statements. With respect to 609, you have, perhaps, a bleed-over from the 115 if their intent was the same. How do you force the bleed-over? If their intent was the same throughout, then you merely have evidence of it in 115 that you didn't have in 609. The solid, clear evidence, and I would agree with the panel, with respect to 609, is an inference from the absence of an explanation given these inventors' use of precisely these materials, the RFOs, for precisely the same purpose. And the failure to disclose that, which is quite material, and which is conventionally used in the industry, described as being conventionally used in the industry, known by them to be conventionally used in the industry, the same industry for the same purpose. Yeah, but it's very different. The RFOs are very different. They're not upstream. They don't involve capillaries in the usual sense. They don't involve... It's not the same. It's not the same in many different respects. With regard to upstream, it's often used in the tank body as the inventors... So it seems to me difficult to say that the RFOs are highly material to the prosecution putting aside the four statements. Very difficult. With respect, Your Honor, I disagree. I think that the capillary issue is a different issue. The question that remains is, is there truly an invention in having something that restricts the flow and protects from hazardous gases? That's the argument that's being made. And the fact that there is something already there which does that, and which is used by these inventors for that very purpose, is then going to be a substantive basis for examination about whether a capillary-based system is truly different in a material way. Maybe it is and isn't, but the examiner should have had the right to understand that. I'm sorry. Go ahead. Finish your... And the fact to me that... The materiality to me is the driver for this. If, in fact, these inventors were using personally these devices for the same purpose, and if they believe their invention was an improvement on that, and maybe an examiner would agree with them, the point of inequitable conduct is they have to say what they were building upon and what they were changing from, and they didn't. Instead, the specification, and the specification doesn't contain statements as egregious as the four, but the entire point of the specification is, this is a way to protect from hazardous gases that's new in the art. And the examiner should have been told of the very technique they were using for that very purpose, because then the examiner could decide whether that's an improvement. And that is as material as it gets, the thing from which the inventors were building. Material, yes, but she didn't even balance materiality and intent. I mean, that's part of the process, isn't it? It is certainly part of the process, and she found intent, I think, fairly. We can debate the language of the order, but she found intent with respect to 609 from the absence of an explanation, given materiality, which is something this court's precedents permit. And she found intent as to 115, in addition to that, from the fact of the four statements that are demonstrably inconsistent with the withheld RFOR. So you would distinguish the decision in M. Eagles on, what, the strength of the showing of materiality? Yes, and if you have... Materiality plus the inventor's knowledge of it and personal use of it. It's one thing to have a stray... Well, if it's clear the inventor doesn't have any knowledge, then the game's over anyway. But there's knowledge of a stray patent sitting in a file is one thing. Their own personal use of that device in exactly the same context for exactly the same purpose is, to me, greater evidence of both materiality and intent. It's not something that would slip your mind. It's not something that I didn't think it was relevant. It was exactly down the middle of the fairway of what they were doing. And yet they didn't disclose it to give the examiner an opportunity to decide if their capillary-based system was truly an improvement or an innovation, an invention, above the RFOR, which did the same thing and was used by them for the same purpose. What would you say with respect to the argument that Judge Robinson conflated the inventors and the Praxair practitioners? I think that's a red herring. She certainly cited the Praxair. That's evidence, just as Larson was, of what was conventional in the industry, what she was relying on. She wasn't saying that when she referred to the Praxair employees who had used this, she wasn't saying that therefore we're attributing, by virtue of that, knowledge of the RFOs. I'm sorry. I don't believe so. The argument was always they were aware of the conventional use of RFOs in this industry for this purpose. And the Praxair evidence and the Larson evidence, and Praxair, the testimony, their square-linking testimony in the record that says what the Praxair witness was describing, and this is what Judge Robinson cited in her opinion, was just the conventional use in the industry. So it's not that this was something unique that Praxair was using that she was relying upon. It was the fact that she knew that the inventors knew of RFOs. Mr. Powers, I want to ask you about her failure to grant the injunction. Assuming that you don't win on inequitable conduct and there's a valid patent that's infringed. Hasn't she sort of written off the right to exclude from the patent statute simply because these are big companies and this isn't a large part of their sales? It's very clear from the her opinion that ATMI had sales. This is a two-company market taking away from Praxair and would continue to have sales. Why aren't the various requirements for an injunction met? There's irreparable harm. The market will be depressed with all these future sales. It's certainly true, Your Honor, that she mentions the size of the companies. I don't think that's the primary driver of her analysis. I think fairly read, her analysis says that Praxair simply failed to do what eBay commands it to do. It was a failure of proof issue. I don't think she's establishing or purporting to establish a new rule of law. What she's saying is, of course in this two-competitor market it is possible that an injunction should be entered. She expressly acknowledges that but with a case as well. What she says is that this party just failed to do what eBay commands it to do to prove it's entitled. Isn't there enough truth in her very opinion showing that ATMI was having sales of the infringing product and they were increasing and therefore Praxair, who was the patentee and who had a valid patent that was being infringed, they had a right to exclude and she simply said no. I believe that analysis would be inconsistent with eBay. eBay says that you don't automatically get an injunction in a patent case merely because a patent gives you the right to exclude. The question really is are money damages inadequate to compensate them for whatever damages are occurring. I think her opinion was fairly straightforward in saying it's certainly possible that such a proof could be made but this party gave them another opportunity to do it too. Should this court do something different then I believe it should but yes. And they could come in with new factual evidence to support an injunction right? That would be up to her of course but I do believe She hasn't foreclosed that. She specifically said they can come back after the appeal. She hasn't foreclosed that. I wouldn't presume to second guess what she would do if they did come back. But for that to happen wouldn't we have to indicate that her criteria for denying the injunction were inadequate? I believe that her criteria were simply a failure of proof. And if you read their papers coming in the papers were pre-eBay papers even though it was post-eBay. It was we get an injunction that's really the end of it. There were none of the typical things you would see in a non-patent case pre-eBay of here's why money damages are inadequate. Often you would have an expert that would say it's difficult to convince customers to change once they've started. There's qualification issues. Whatever it is there is a body of evidence that lawyers and parties put on to establish irreparable harm. They did not do it. And her point which I think is a point this court actually should reinforce not undermine is that parties do have to do that. They shouldn't just come in and say here's  eBay changed that rule and she's enforcing that rule and I think that's appropriate for her to do and I think it's appropriate for this court to reinforce that position because in fact they did nothing to establish irreparable harm. What about Port Body? On Port Body Your Honor I... Isn't Port Body all over the patent several indications of what's connected to the Port Body. Isn't it fairly clear what the Port Body is? It is fairly clear from three statements what they think the Port Body should do and it's fairly clear where they think it's located. What it isn't clear and this court's precedents are quite I think uniform on this issue. You cannot describe a structural apparatus in functional terms. It cannot be that you just are saying here's the thing and I'm going to tell you more or less what it does. But this isn't a case where someone threw in a term in a claim prosecution that can't be found in the patent. This is clearly in the patent in several places. It's in the... Part of the description of the invention. It's in the summary of the invention. It is not in the detailed description. It is not in the section which says on Figure 2 for example, and this is the point Judge Dyke made, that Figure 2 does not use the term Port Body to describe anything in Figure 2. Well you say it's in the summary of the invention as suggesting summaries of the invention are often quite small. This is too full column. This one's longer. You're right. But it is not something where it says the Port Body the typical detailed description of course as we all know would say the Port Body number 27. The number's missing. I mean the question is, is it any more fundamental or misleading than the omission of the number? I believe it is and I think the evidence for that comes from the fact that no expert has been able to say conclusively and in fact as Judge Dyke points out, other experts are saying I can't figure this out. It might be this. It might be this. It might be that. The function of a patent is to describe clearly what a device is. What are the alternatives here when we look at the patent? You say that they're wrong in identifying the Port Body as the valve body and the screw thread structure. What are the alternative interpretations that make it ambiguous? It's not so much that there are two or three alternatives although their expert came up with two or three alternatives. It's that we don't know what it is. You can't give us an alternative interpretation? One alternative interpretation is that the Port Body is not the combination of all three of the things listed in that one paragraph in the summary of the invention but it's disjunctively those three things. Another alternative is that it's more than those three things. We don't know. They are trying to add the screw threads at the bottom and say that that is part of the Port Body where nothing says that it is and they're trying to say that parts of figure two... Doesn't the screw thread structure have to be part of the Port Body because otherwise it couldn't perform the described functions without it? One of the functions I think is fairly described as being related to the screw threads but the screw threads aren't necessarily the means by which it would be sealingly engaged. They might have some other structure that does that. It's not described as doing that. That is lawyer argument hypothesizing about what that should be and the normal way that the law is indefinite is you would have an expert who would be saying I'm looking at this, it's clear to me, there's no ambiguity about it. In fact you have their own expert albeit in another case saying I can't tell what this is. This was resolved on summary judgment, correct? It was. As a matter of law. And there was what was there by way of expert affidavit? I don't know the answer to that. In connection with the indefiniteness. I don't know the answer to that. I believe they did not submit an expert report. I'm told by Mr. Eisenberg that that's true. Could I ask you one question before he times up on the claim construction issues that you raised? Yes. It strikes me looking at 9470 which seems to be the summary of the party's alternative claim constructions. Yes. You didn't ask for the simple claim constructions that you're now asserting on appeal and under Rule 51 in our biodex jurisprudence you've got to offer a correct claim construction whereas for example on the severely limited you didn't offer a simple severe limitation claim construction, you offered one which is much more specific and under those circumstances aren't you in a pickle under Rule 51? With respect Your Honor I disagree and may I lay out the history of the claim construction because I think it's important to respond to your question. The original position that we took was that it must be a severe restriction and that we lay out in the brief how both sides understood that, the court understood that to be our position. There was though a question raised as to whether that would be sufficiently definite. Our position was that it had to be always the poor position. I think fairly stated and both sides acknowledged that and we lay that out in the brief in detail. The specificity in terms of flow was a subsequent attempt to make that more definite. So it's certainly true that we offered a more specific construction as well. I don't think it's fair. Didn't you give up the other one? The problem is that you've got you can't sort of sandbag the district court by offering different claim constructions. You have to arrive at one and say this is the correct one and this is the way you should instruct the jury. Isn't that what we're seeing here at 9470 and following? Isn't that your final contention as to what the claim construction should be? With respect, I don't think so. I think that the portion, we've cited portions from the district court's opinions in the brief that make clear that the district court understood that our core position was the severity without the specificity. So there's no question, I think... This is a jury trial and the rules are pretty clear. They're saying that for precisely the purpose of avoiding getting into this kind of, well, our position was clear from the beginning and we modified it. The rules are pretty clear that you've got to object to the charge that's given with specificity as to the reasons that you think it's wrong. And if that's not done at jury charge at the point that the court formulates the jury charge, then you've waived those issues. Did you say in so many words or words to the same effect, we think it should be severe or severe with the enumerated degree, but failing that at least severe? I don't think the discussion... Did you present that to the court as a proposed jury instruction? At the time of trial, at the time of the instructions being given to the jury, I don't believe the objections were given by either side at that level of specificity. I think there was an incorporation by reference back to the arguments of the Markman. So we're in the same position we were before that if I'm right that Judge Robinson understood our position to be that it must be severe and to make that more definite you might want to put a specific definition on it in terms of flow rate. I don't think there's a question that this court misunderstood our position. I think the quotations from both sides and from Judge Robinson make that clear. And I think there was clearly a timely objection made. It just incorporated all of the prior discussion. Well, that's exactly the problem that Judge Bryson's talking about. Rule 51 is supposed to create a situation where at the charge conference the parties are specific. What happens in these patent cases repeatedly is that you have this Markman hearing, you have different claim constructions and then the parties sort of ignore the Rule 51 obligation when it gets to the charge conference. And we're left with the kind of mess that we have here. Now in some cases we've said that raising the issue again at the charge conference is excused by futility. But as a general rule, you're supposed to go there to the charge conference and say this is what we want so that the judge knows what the issues are. After all, claim construction can change during the course of the proceedings. And this is the district we're supposed to have a last opportunity to say yes or no to what you're asking for. And that didn't happen here. That did not happen. I think this is the more conventional case that is approved by this court where the parties and the court believe that that was all settled and it was we're going to leave everybody's objections from before are maintained. And with respect, I don't believe this case is as messy as others. That's not necessarily such a good sign. We've had some very, very messy ones. Perhaps the bar is too low in that respect. But the portions that we've quoted in the brief from Judge Robinson and from both sides I believe make clear that what was joined as the issue is severe flow or not. But you think that we would find sufficient guidance at the jury charge discussion in the point of objections. Make clear that Judge Robinson understood your position and was allowing this incorporation by reference process. I can't make a representation about that because I wasn't there. That's my understanding of what happened. Thank you, Mr. Powers. We'll hear three minutes rebuttal from Mr. Harnett. Yes, Your Honor. Mr. Powers made repeated reference in the inequal conduct discussion to prior use of what he said was exactly the same thing by inventors. That's not correct. What he's talking about is the MaxLight device. The district court already ruled that the MaxLight device was not material. She said at page A79 and 80, a reasonable examiner would not have considered such cursory information to be material for the prosecution of the patents in suit. She said there is too little evidence concerning the MaxLight device. So this whole notion that the inventors were using the same thing, this was something 25 years ago that nobody really remembered that has absolutely nothing to do with intent. The court has already ruled that out. That is not the subject of A.T.M.I.'s appeal. With respect to the incorrect statements, I would respectfully what Judge Robinson found to be the incorrect statements about the Oracle Art, I respectfully direct the panel's attention to paragraphs 22 and 23 at A92 of the record. The district court's taking issue with certain arguments that were made during the prosecution of the 115, and what she says are incorrect in each and every instance, she bases her conclusions that are incorrect on DTX 23. DTX 23 is Larson. There is absolutely no evidence in the record that any of the people who had a material duty under Rule 56 knew about Larson. They did not. If we look at page 54 of our general brief, there is an explanation of why during prosecution of the 115 patent, those arguments that were made were still correct and would have still been correct even if Larson, which they didn't know about, was in front of the examiner. With respect to the question on claim construction that you raised, A.T.M.I. is in fact running away from the claim construction, both capillary and flow restrictor that they adduced at the district court level. The flow restrictor limitation was not some bifurcated or decoupled thing. It was not some alternative construction. You can look at page A533 of the appendix. It is their opening claim construction brief where they explain that their claim construction of flow restrictor is severe and severe is described as the RC and embodiment of 10 SECM. It's right there at page A533. It's an unambiguous statement that that is their claim construction. Are you saying, let me make sure I understand exactly what you're saying. You're saying that they never proposed a broader, less specific claim construction? Not to my knowledge, no, Your Honor. You're taking square issue with Mr. Powers. I'm taking square issue, and I would direct the court's attention to page A533. There's no better place for it than in their claim construction brief. That's what they said what their claim construction was. And that's what the court typically we see several different iterations of claim construction. So one brief, one reference and one brief doesn't necessarily mean that was the universe. My recollection is a long time ago, I was there for every minute of it. I don't believe I ever saw a more limited construction. They did say that they thought flow restrictor was indefinite, and when they offered a proposed construction for it, this was it. They never just said severe, as far as I know. Page A533 shows what they thought the claim construction was, as far as I am aware. Is there a final point? Yeah, there's a question about on summary judgment with the port body, whether or not there was an expert report submitted. There was. It's page 2912 of the appendix. And following it, and with respect to the injunction, it's a question of yes, it was denied without prejudice. I submit that there was no failure of proof. We showed that there was a two-player market, that there were lost sales that go head to head. So, you know, the court did ask for clarification. She did ask for... She did give you another opportunity. She did give me another opportunity, yes. But I think what she asked for, she said the quantum of proof after eBay is unclear. She asked this court for some guidance, and she did make a conclusion that I think had to be raised on appeal, that two big companies somehow aren't entitled to injunction. And I would submit that that's inconsistent with 200 and some odd years of jurisprudence in the Constitution that says a patent gives you a right to exclude. Big companies shouldn't be excluded where small companies are. And these are head-to-head competitors. One sale goes to the other, and that's that. Thank you, Your Honor. Mr. Hunter, the case will be taken under advisement. Thank you. All rise. The Honorable Court is adjourned from day to day.